[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case arises out of the repair of the plaintiff's car by the defendant.
On November 7, 1989, while the plaintiff's wife was driving to work using the plaintiff's car, the car broke down on the Merritt Parkway and was towed to the defendant's shop to be repaired. The work order for the car was dated that day.
The defendant's mechanic took the engine apart and found that the engine's head had cracked internally. He reported this to his superior and was told to wait for the insurance company to decide what to do. The representative of that company came to inspect the car two or three days later. He ordered the defendant to put new rings on the pistons and new bearings. The inspection report of the defendant's mechanic had read in part: "Remove all top covers, remove valve cover to check push rods, push rods look ok, check with cylinders, not work No. 2 cylinders, NG, also No. 2 makes noise, engine should come out for further check." The recommendations of the defendant's mechanic obviously was not followed. The mechanic thought it was improper not to do what he had recommended. The car was returned to the plaintiff but immediately came back and a new work order was prepared by the defendant on January 8, 1990. This stated that the engine was still knocking, that the head should be removed and the oil pan, CT Page 4836 and that the pistons be removed. It was found that the wrist pins and the pistons were bad. The order read: "replace 4 pistons and rods and bearings." The order also required work on the "oil pump, the oil pump seals, the head gasket, and to remove all check valves." There were other problems noted also, "head NG, needs new head, valves . . . pistons." The car was fixed and returned to the plaintiff on January 23, 1990, 15 days after it went into the shop. The order notes the bill of $494.88 was "paid under protest."
Three days later the car was back. The work order noted that it was found that "antifreeze leak, remove and replace water pump, remove and replace therm gasket." While the car was in the defendant's possession a mechanic damaged the car in the left rear. It was taken to a body shop and was returned after the damage was repaired. The plaintiff paid $219.76 for the work done on the car. However, he was not charged for fixing the damage caused by the mechanic repaired.
If the defendant had done the work apparently required as the mechanic wanted, and did not listen to the agent of the insurance company who wanted a cheap repair job done, the work would have been done 15 days after November 7. Thus, the car would have been repaired by November 22. In fact, it was held for repairs from November 7 to January 23, a total of 77 days. On June 8, 1990 it had been returned to the plaintiff but came back in immediately. So the defendant took 16 days to repair the condition the car was in on November 7. Thus, the car was held 61 days unnecessarily because the defendant had agreed to do the cheap job the insurance company wanted and which its own mechanic did not recommend.
Then when the car came in to the defendant's garage again on January 26, 1990 to fix an antifreeze leak and other minor problems, a mechanic caused the car to be so damaged it had to be taken to a body shop on February 1, 1990 where it was held until February 28 for repairs. That was 28 more days the plaintiff did not have the car.
Adding the 61 days the car was held unnecessarily the first time and the 28 days it was held to repair damage caused by the defendant's mechanic results in 89 days. That figure times the rental rate of a car similar to the plaintiff's car of $51 a day equals $4551.00. The plaintiff has been damaged by that amount because of the defendant's actions holding car for repairs beyond the time it could have made the required repairs. CT Page 4837
Judgment may enter for the plaintiff to recover of the defendant $4551 plus costs.
Thomas J. O'Sullivan Trial Referee